## Case No. 3,122.

### CONOVER v. MERS.

[11 Blatchf. 197; 6 Fish. Pat. Cas. 506.] [1]

Circuit Court, S. D. New York. June 16, 1873.

INFRINGEMENT OF PATENT—ACCOUNT OF PROFITS.

In taking an account of profits, in a suit in equity for the infringement of a patent for machinery, the gain or saving arising from the use of the infringing machinery cannot be applied to make up losses sustained by the defendant on other branches of his business.

[Cited in Webster Loom Co. v. Higgins, 43 Fed. 676.]

[See note at end of case.]

[In equity. Hearing on exceptions to master's report. Suit brought [by Jacob A. Conover against Henry Mers] upon letters patent [No. 12,857] granted to Jacob A. Conover, May 15, 1855, for a "machine for splitting kindling-wood." The case is a continuation of the case of Conover v. Mers [Case No. 3,123], where there is a full description of the patented machine [and in which case a provisional injunction was granted]. The devices are also described in the case of Conover v. Dohrman [Id. 3,120]; Conover v. Roach [Id. 3,125]; and Conover v. Rapp [Id. 3,124]. In the present case the master reported no profits, and as the case was brought prior to the act of July 8, 1870 [16 Stat. 198], therefore the recovery was confined to profits only. Though the testimony showed that the use of complainant's machine made a saving of eighty cents per cord of wood over the process of splitting by hand, yet when taken in connection with the other sales of uncut wood and wood sawed but not split, by defendant, it was shown that upon the whole business defendant had made no profit.] [2]

Peter Van Antwerp, for plaintiff.

Frederick S. Stallknecht and Elial F. Hall, for defendant.

WOODRUFF, Circuit Judge. The complainant, having obtained a decree establishing his rights under a patent for a wood-splitting machine, and adjudging that those rights had been infringed by the defendant, by using a machine without license or authority from the complainant, and that he recover the gains and profits made by the defendant by the use of such infringing machine, the usual reference was made to a master, to ascertain the amount of such

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

[2] [From 6 Fish. Pat. Cas. 506.]

gains and profits. The master, after taking proofs, has reported that no gains or profits were made by the defendant. To this report the complainant has filed exceptions.

The proofs showed that the defendant was a dealer in wood, from the 8th of March, 1866, and thence onward, and that he kept a wood yard, making sales therefrom, of wood, in three forms: 1st, uncut wood, (i. e., in the condition in which it was purchased); 2d, wood sawed by the defendant into short pieces, but not split; and, 3d, wood sawed, split, and tied into bundles. The proofs showed that all the wood tied into bundles was split by the machine. A distinguishing feature of the machine, embraced in the complainant's patent, appears to have been a device for the automatic feeding of the wood to the splitting instrument, by a movable platform or apron, moved by an endless chain; and it was conceded, on the argument of the exceptions, that the complainant is not entitled to, or, at least, that he does not claim, any profits of splitting wood by the machine, where such chain was not used to feed the wood to the splitting instrument or knives. The balance of the evidence before the master is, that such chain was not used after the 24th of May, 1869. There is some reason to doubt whether it was used, save for one day only, down to so late a date.

The testimony is quite distinct and uncontradicted, that there is an actual saving of eighty cents per cord in the use of the machine for splitting, over the cost of splitting by hand, or splitting by a hand machine —by which latter I understand the witnesses to mean a machine, to the knives of which the wood is fed by hand, i. e., without the use of the endless chain and apparatus for automatic feeding. The quantity of wood split on the machine, as well as the before-named period of its use, is not very precisely shown, but the proofs from the defendant's own books do show the amounts he paid for wood for his whole business, and he himself gives the average cost per cord. Two of his employees testified that one-eighth was split and made into bundles. So that, by these elements, if the defendant's books show the times of purchase, there are some data upon which to calculate, with reasonable precision, the quantity split in each year. Besides this, I do not perceive that the defendant would have any just ground of complaint, if the proof in regard to the number of bundles made by each cord, and the number of strings purchased by the defendant and used for tying the bundles each year, were taken as the test of quantity, with such allowance for waste as the proof may show to be usual. Clearly, here were, by the aid of both sources or means of estimate, materials out of which a just conclusion could be reached, touching the number of cords of wood split by the defendant by the use of the infringing machine; and, that number

being found, the sum of eighty cents per cord would, on the proofs as they now stand, be the saving to the defendant by the use of the complainant's invention.

The report of the master seems to have proceeded on the ground, that, because the aggregate business done by the defendant did not result in a profit, the complainant is entitled to recover nothing. If so, the master was in error. It is quite true, in cases in which gains and profits alone are to be awarded, that, where the defendant has used the infringing machine so unskilfully, or in a manner so unbusiness-like, that he has made no profits, the complainant can recover none; but, on the other hand, the defendant cannot prejudice the complainant by applying the gains arising from the use of an infringing machine, to make up losses on other branches of his business. Here, the defendant was dealing in wood generally, selling wood unsawed, wood sawed, and wood sawed and split and tied in bundles. For the purposes of his general business, it cost him eighty cents per cord more to split his wood by hand, or by a hand machine, than it did by using the infringing machine. He actually saved to himself eighty cents per cord on all that he split by that machine and made into bundles, and this without increasing his other expenses in any degree. There would seem to be distinct and definite profit realized by the defendant by the violation of the complainant's rights—profits ascertained and realized day by day, quite irrespective of the inquiry, what were the aggregate results of his whole business. If there were any general or other expenses, apportionable to this department of his business, the proofs do not show them.

The proofs are not so clear as to the precise time when the defendant ceased to use the endless chain, and, therefore, not so definite as to the quantity of wood split, as to make it safe for me to fix the amount of profits. Obviously, the proof shows that the use of the chain continued till suit brought, and to that time the complainant's right to recover seems clear. I deem it most prudent to set aside the report and refer the matter back to the master, to hear the parties further on the proofs already taken, and such further proofs as either party may desire to give.

[NOTE. The master subsequently reported, and, among other things, found that by the use of the infringing machine "there was saved to the defendant 75 cents per cord in wood split by him and made into bundles." This report was confirmed, and a final decree entered for complainant. Defendant then appealed to the supreme court, assigning as error that the report was erroneous, and not supported by the evidence.

[This decree was affirmed by the supreme court, Mr. Justice Strong stating that the evidence fully supported the finding, within the rule laid down in Mowry v. Whitney, 14 Wall. (81 U. S.) 651; i. e. that the profits of the use of an infringing machine are the worth of the advantage obtained by such use, and that the

fact that the machine used was old and defective, and that in fact no profits were realized from its use, but, on the contrary, a loss, was immaterial, as, conceding that defendant was a loser by the use of the machine, his loss, according to the testimony, was less, to the extent of 75 cents a cord, than it otherwise would have been.

[It was suggested by the defendant on the argument that, since the decree in the circuit court, the defendant had surrendered his patent, and obtained a reissue, and the court said that, assuming that fact to be true, it was nevertheless immaterial, for the reason that a surrender of the patent after final judgment could have no effect upon a right which had previously passed into judgment. Mers v. Conover. 23 U. S. (Lawy. Ed.) 1008; also note by Mr. Justice Gray to Tilghman v. Proctor, 125 U. S. 144, 8 Sup. Ct. 894.]