## Case No. 17,338.

WEBSTER et al. v. NEW BRUNSWICK CARPET CO.

[2 Ban. & A. 67;[1] 9 O. G. 203.]

Circuit Court, D. New Jersey. April, 1875.

INFRINGEMENT OF PATENTS—ACCOUNTING—BURDEN OF PROOF—ASCERTAINMENT OF PROFITS—PATENTED IMPROVEMENTS.

1. In taking an account under a decree for the infringement of a patent, where the profits and damages are to be estimated upon the extent of the use of the infringing machines in manufacturing an article, it is incumbent on the complainants to show affirmatively the number of yards produced by the use of such machines.

2. Where a witness stated that a certain number of yards were manufactured, but did not state in precise terms that it was the entire quantity produced, and gave other evidence of the capacity of the infringing machines, which tended to show that a much larger quantity might have been manufactured, and the master inferred that the witness did not mean to indicate the whole production, and for want of more sufficient data reported in favor of the amount which an average of the number of the machines used, under favorable conditions of operation, were capable of producing within a specified time: Held, that the master was in error, as the question is not what could be, but what was produced by the use of the complainants' invention.

3. The master should have made his estimate of the profits for which the defendant is chargeable, upon the actual production by the use of the instrumentalities employed, and not upon the capacity of such instrumentalities.

4. Where the complainants' invention is an improvement upon an existing machine by which its productive capacity is increased, the measure of the complainants' profits is to be ascertained from the consideration of the advantage which has resulted to the defendant by his unauthorized use of the complainants' invention, and would be the amount produced over and above what would have been produced by the machines if the complainants' improvement had not been used.

[Disapproved in Webster Loom Co. v. Higgins, 43 Fed. 674.]

5. Profits are in the nature of damages which up to the date of the final decree are unliquidat-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

ed, and interest should not be allowed before that time.

In equity.

C. H. Seward, for complainants.
George Gifford, for defendant.

NIXON, District Judge. On the final hearing of this case [Case No. 17,337], the decree of the court was, that the letters patent No. 130,961, issued to the complainant, [William] Webster, August 27, 1872, for a new and useful improvement in looms for weaving pile fabrics, were valid in law; that the corporation defendant had infringed the same by using the improvements described and recited in the fifth claim; that a reference should be made to the master to take an account of the profits realized by the defendant, and of the damages sustained by the complainants, in consequence of the said infringement. The master has made his report, to which the counsel for the defendant have filed ten exceptions.

1. The first refers to the amount of the production of the looms, in the use of which the defendant infringed the complainants' patent —the master assuming, from the evidence, that the defendant manufactured 450,864 yards of carpet during the period of the infringement, whereas, it is claimed that the proof shows a manufacture of only 153,472 yards. It is to be regretted that a fact which was probably capable of positive demonstration, has been left in such an uncertain and doubtful state. It was incumbent on the complainants to exhibit, affirmatively, the whole amount of the production, in order to measure the damages, and to approximate the extent of the profits. Under the decree and reference they had access, by subpœna, to the books of the company, and to its officers, consignees, and agents. They chose to rely alone upon the testimony of Mr. Short, the company's superintendent, and on the inferences which they thought could be legitimately drawn from his statements, in regard to the number of looms purchased, and their capacity of production. He says that he was the superintendent of the company from the date of its organization to the adjudication in bankruptcy; that he was familiar with its operations; with the number of looms used; with the style and cost of the carpets made, and with the prices received; that the company had forty-three looms, in all, but only used on the average thirty-one; that during the interval between October 1st, 1872, when the company started business, to September 20th, 1873, when it closed, it produced by the use of these looms, 153,472¾ yards of carpeting of the kind known as tapestry Brussels; that they were consigned to S. B. Hunt & Co. and J. B. Archer & Co., the former firm receiving 38,215⅛ yards and the latter 115,257⅜ yards.

That was the whole testimony on the question of production. No further inquiry was made, either in the direct or the cross examination, in regard to the subject, and it would seem that both parties, recognizing the honesty of the witness and his opportunities of knowledge, were satisfied to accept his statement as true. If they had not been, it would have been easy for either side to have brought forward the books of the company, or the consignees, or other consignees and agents, if there were any, and from these sources to show its want of correctness. But, because the witness did not say, in precise terms, that the 153,-472¾ yards was the entire quantity produced, and because he gave other evidence in reference to the capacity of the looms, with the complainants' wire motion attached, which tended to show that a much larger quantity might have been manufactured, the master has inferred that the witness did not mean to indicate the whole production, and, for the want of more sufficient data, he has reported in favor of the amount which an average of thirty-three looms, under favorable conditions of operation, was capable of producing within the specified time. I have carefully examined the evidence, and think the master has mistaken its clear import. In the inquiry concerning the profits, the question is not what could be, but what was produced, by the use of the complainants' invention, and the fair construction of the witness's testimony is, that 153,472¾ yards was the actual amount. The first exception, therefore, is sustained.

2. Without considering the remaining exceptions in detail, it is sufficient to observe, generally, that the radical defect of the master's report seems to be that he has, in fact, made his estimate of the profits for which the defendant is chargeable, upon the capacity of the instrumentalities employed, and not upon their actual production. The error is the more remarkable, because he evidently, and properly, aims, in his report to limit the profits to the increased product.

The measure of the complainants' profits, on this reference, is to be ascertained from the consideration of the advantages which have resulted to the defendant by its unauthorized use of the complainants' invention. These advantages have arisen from the use of looms, the daily yield of which, with a good operator and under favorable circumstances, was about forty-eight yards, instead of looms with a daily yield under the same conditions, of about thirty yards. If I understand the evidence taken, it is to the effect that the incorporation of the complainants' wire motion into a Bigelow machine, adds about eighteen yards per day to its productive capacity; and as both parties have taken that loom as the best now open to the public use, it would seem that no difficulty ought to exist about the correct method of arriving at the profits for which the defendant should account.

The first inquiry is, what is the net profit which the defendant realized upon each yard of carpet manufactured? The master—after fully considering the cost of making, the expenses of consignees, and the average prices received on sales—finds this to be $20^2/_5$ cents

per yard, and, under the evidence, I deem that to be a reasonable approximation.

The next inquiry is, what was the increased production in consequence of the use of the complainants' patent, from October 1, 1872, to September 20, 1873? The master reports this increase to be 201,949 yards, which, as we have already seen, is deemed to be in excess of the whole actual production. The process of reasoning by which he reaches that result is as follows: The average capacity of the Bigelow loom is 26½ yards per day; the average capacity of the same with the complainants' wire motion attached, is 48 yards, showing an increase of 21½ yards per day in favor of Webster's invention. The aggregate production of 31 looms—the number in use by defendant—at 48 yards per day, is 450,864 yards, for 303 working days of ten hours each. The aggregate production of the same number of looms for the same length of time, at 26½ yards per day, is 248,914½ yards—exhibiting an increased production of 201,949½ yards, by the use of the complainants' patent. See Master's Report, fol. 408.

But it is quite obvious that this calculation is based on the capacity of the looms. It assumes that during every minute of the ten hours of each working day, every loom was in running order, in operation, and in the hands of a good operator; whereas the evidence is that the defendant corporation had inexperienced workmen; that the looms were new, bady made, and run at great disadvantage; and that the mill was frequently stopped for alterations or repairs of breakages.

The calculation should have been made on the actual production, which we have hereinbefore held to have been 153,472¾ yards, and then the method of computation would have been as follows:

If 31 looms—each with a productive capacity averaging 48 yards per day—yielded 153,472 yards in 303 working days, how much would the same number of looms yield, in the same time, having a productive capacity of only 30 yards per day each? The number of yards would, of course, bear the same relative proportion to 153,472, as 30 bears to 48, and would amount to 95,920 yards. The difference between these would be the increased production, to wit, 57,552 yards. As it does not appear from the testimony that the material, labor, machinery, interest on capital, and all the elements which enter into the cost of production, would, to any extent, vary in the two cases, we are not called upon to perplex the subject—as the counsel for the defendant did on the argument—with their consideration. The measure of profits to the complainants is the net profit realized by the defendant on this increase, which was 20²/₅ cents per yard, amounting to $11,741.40—for which sum a final decree will be entered for the complainants with costs. All costs that have accrued to the complainants since the assignee in bankruptcy became a party to these proceedings, are to be paid in full, from the bankrupt estate.

With regard to the question of interest, this does not seem to be a case where it should be allowed before the entry of the final decree. The profits are in the nature of damages, which up to that date are unliquidated. I find nothing in the evidence that distinguishes the case in principle from American Nicholson Pavement Co. v. City of Elizabeth [Case No. 309], and Mowry v. Whitney, 14 Wall. [81 U. S.] 653, and the master's report, giving interest from the date of the interlocutory decree, is overruled.

[For other cases involving this patent, see note to Webster Loom Co. v. Higgins, Case No. 17,-342.]