## WEBSTER LOOM CO. *v.* HIGGINS *et al.*

*(Circuit Court, S. D. New York. September 1, 1890.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—MEASURE OF DAMAGES.
   Where the infringers of a patented loom for weaving carpets could, according to the patentee's own evidence, have attained the same results if, instead of using the infringing looms, they had used twice that number of non-infringing looms, the patentee's measure of damages is the difference between the cost of weaving the carpets on the non-infringing looms and the cost of weaving them on the infringing looms, and not the net profits which the infringers received per yard on the increased amount of carpets manufactured by means of the infringing looms. Disapproving *Webster* v. *Carpet Co.*, 2 Ban. & A., 67.

2. SAME—ACTION FOR INFRINGEMENT—MASTER'S REPORT.
   Where the master, to whom was referred the ascertainment of the damages sustained by complainant in consequence of defendants' infringement of its patented loom, has not specifically found as to the alleged superiority of a non-infringing loom over the one infringed, the court will not assume that he intended to so find from indefinite answers to defendants' requests on that subject, but will recommit the case to him, so that he may clearly state his own conclusions from the evidence.

3. SAME—NEWLY-DISCOVERED EVIDENCE.
   Where defendants introduced evidence of the alleged superiority of the non-infringing loom at the close of a long hearing before the master, complainant, who was then unable to obtain rebutting evidence, and who did not then have a full opportunity to present that branch of its case, will be permitted to do so on the recommitment of the case to the master, though complainant does not unquestionably bring itself within the rules which ordinarily govern the reopening of a hearing to admit newly-discovered testimony.

In Equity. On exceptions to master's report. For former report, see 39 Fed. Rep. 462.

*Edward N. Dickerson, Esek Cowen,* and *Edward Stephens,* for complainant.

*Livingston Gifford* and *Walter K. Griffin,* for defendants.

Before SHIPMAN and WALLACE, JJ.

WALLACE, J. I have sat with Judge SHIPMAN upon the reargument of the exceptions to the master's report in. order that a ruling of mine, made upon the application of the defendants for instructions to the master, might be reconsidered; and the other questions which have been reargued will be disposed of by Judge SHIPMAN without my participation. At the threshold of the accounting the defendants applied for instructions to the master, which would, if allowed, preclude the complainant from investigating the cost of carpet material to the defendants at any stage of manufacture before it was ready for the loom. These instructions could not have been given without disregarding the decision of Judge NIXON in *Webster* v. *Carpet Co.,* 2 Ban. & A., 67. He had decided that an infringer of the patent was liable for the net profits realized upon the number of yards of carpet made by the use of the invention in excess of the quantity that could have been made by using non-infringing looms. That decision was accepted as the correct rule of recovery upon the application for instructions, without any independent consideration of the nature of the patent or the character of the infringement. Notwithstanding the excellent authority of the opinion of Judge NIXON in support of the ruling, I am satisfied that my ruling was radically erroneous.

The invention which the defendants have appropriated is specified in the fifth claim of the patent, and is for an improvement in the wire-motion devices of looms for weaving pile fabrics. The improvement enables the loom to be driven more rapidly, and thereby the weaver can make more yards of carpet in the same period of time than he could make upon a loom without it. The defendants were manufacturers of carpets on a large scale, having the requisite capital and general facilities for carrying on an extensive business. They bought the material, chiefly wool, of which carpeting is made, in the raw state, and, after subjecting it in the various departments of their factory to the operations of washing, sorting, combing, carding, spinning, dyeing, etc., in order to prepare it for the loom, at the last stage of the production of carpets wove it upon looms, some of which contained the patented invention. When the material was prepared for the loom, it was in that condition a marketable commodity, and presumably could have been sold in the market at a profit above cost, which would have yielded the defendants a partial return, at least, for the use of their capital, and for their experience and judgment in purchasing and treating it. During the period of infringement there were other looms, open to public use, having devices for effecting the result accomplished by the patented devices, and by which the same result of increased rapidity in weaving was actually accomplished with a greater or less degree of success. The defendants employed many non-infringing looms in their factory, together with 61

infringing looms. They wove 8,277,012 yards of carpeting on the infringing looms, which quantity, according to the theory of the complainant, was 4,145,872 yards more than they could have woven on the same number of non-infringing looms. Consequently it appears, in the aspect of the proofs most favorable to the complainant, that the defendants could have made all the carpeting they did make if, instead of using the 61 infringing looms, they had used twice that number of non-infringing looms. Upon such a state of facts it is entirely clear that the defendants are not accountable for any part of their profit upon the material when it was ready for the loom, included in its market value at that time, or for any part of the seller's profit on the increased production.

In settling an account between a patentee and an infringer, the liability of the latter for profits is measured by the advantage which he has gained by the use of the patented invention. It is often difficult to ascertain with even approximate accuracy what the value of this advantage is in a particular case; and the rule established by the adjudications, which imposes upon the patentee the burden of ascertaining and separating this value from the profits which the infringer might have made without appropriating the invention, but did not make, nor attempt to make, frequently strips the patent of all value. Nevertheless the rule obtains, and must be applied as best it may be to cases as they arise by the light of the illustrations afforded by the reported cases. The adjudications declare that the advantage gained by the infringer who makes and vends a patented article is measured by the value which the invention contributes to the market value of the article; and he is held accountable to that extent, unless his net profit in making and selling the article is less than the value of the invention. If the invention invests the article with its whole value as a marketable commodity, his entire gains are attributed to the invention. If it contributes only a subsidiary value, this value, segregated from the independent market value of the article, is the advantage for which he is accountable; and it is incumbent upon the patentee to show affirmatively what this advantage is worth by reliable evidence, however difficult it may be to do so. In *Elizabeth* v. *Pavement Co.*, 97 U. S. 126, the patented article was a wood pavement, and did not differ from other wood pavements, open to public use, except in the mode of arranging and combining the materials of which it was composed; but the infringer was held liable for the whole difference between the cost of materials and labor and the price received for the pavement when laid, upon the theory that the whole value of the pavement was contributed by the invention. The court said:

"The parts were so correlated to each other, from bottom to top, that it required them all, put together as he put them, to make the complete whole, and produce the desired result. * * * Thus combined and arranged, they made a new thing, like a new chemical compound. It was this thing, and not another, that the people wanted and required."

On the other hand, in *Dobson* v. *Carpet Co.*, 114 U. S. 439, 5 Sup. Ct. Rep. 945, the patent was for a design for carpets, and the court below had allowed as profits the difference between the cost to the infringer

and the selling price. But the supreme court considered it a matter of common knowledge that, as between carpets of different designs, one patented and another not, the one with the patented design might or might not command in the market a higher price than the other, and reversed the decree below; applying the doctrine that the entire profit from the manufacture and sales of a patented article is not chargeable to the infringer "unless it appears by reliable evidence that its entire value as a marketable article is properly and legally attributable to the patented feature." The court held in that case that the owner of the patent could not recover anything as infringer's profits, because the value of the advantage attributable exclusively to the design was not shown. In the more recent case of *Callaghan* v. *Myers*, 128 U. S. 617, 666, 9 Sup. Ct. Rep. 177, the infringer of a copyright had published and sold books in which copyrighted matter was incorporated with matter which he had a right to use, and the court held that, the lawful matter in the infringing book being useless without the unlawful, and it being impossible to separate the profit on the latter from that on the former, and the volume being sold as a whole, the defendant was responsible for the consequences, and liable for the entire profit. In the recent case of *Am Ende* v. *Seabury*, *ante*, 672, (decided in this court,) the infringing corporation was held liable to the owner of a patent for a chemical preparation (borated-cotton) to the extent of the whole profit made on the sale of the article. It was insisted that the ingredients of the compound could have been sold at a profit, and that it was incumbent upon the patentee to prove what part of the whole profit arose exclusively from selling them as borated cotton; but the court held that, the defendant having converted them into the new chemical composition, and having sold them as such, whatever profit accrued was attributable to the patented invention.

The embarrassment so often found in ascertaining the value of the advantage derived by an infringer when the infringement is the selling of a patented article seldom occurs in cases where the infringement consists in using a patented process or machine by which a thing old in itself may be made more economically than it could be without employing the invention. In these cases the advantage attributable to the invention is the gain in economy of manufacture; and it matters not whether the general business of manufacturing and selling the product has proved profitable to the infringer or not, he is responsible to the patentee to the extent that he has saved himself from loss by using the patented invention. *Mowry* v. *Whitney*, 14 Wall. 620; *Cawood Patent*, 94 U. S. 710; *Black* v. *Thorne*, 111 U. S. 123, 4 Sup. Ct. Rep. 326; *Thomson* v. *Wooster*, 114 U. S. 104, 5 Sup. Ct. Rep. 788; *Conover* v. *Mers*, 11 Blatchf. 197, affirmed, 125 U. S. 144, note, 8 Sup. Ct. Rep. 898, note; *Tilghman* v. *Proctor*, 125 U. S. 136, 8 Sup. Ct. Rep. 894. In such infringements it is immaterial what profits the infringer has made in his business, or from his manner of conducting it; but the expense of using the process or machine over that of using one open to the public is to be ascertained by the manner in which he has conducted his business, and not by the

manner in which he might have conducted it. The advantage derived by the farmer who has raised a crop of grain and threshed it with a patented machine which threshed more in a given time than any other machine could have threshed is not, according to the rule of the adjudged cases, the profit made on the sale of the excess, including the contribution made by the use of his land, and by his labor in plowing, planting, reaping, and harvesting; no more is it, in the present case, the profits made by the defendants upon the manufacture and sale of their increased production of carpets.

Assuming that the defendants were by the use of the patented wire-motion enabled to weave more yards of carpet than they could under similar conditions and circumstances with non-infringing looms, the inquiry in the case is how much more it would have cost them to employ enough non-infringing looms to do the work done by the patented looms. It is not necessary to consider at this time what factors enter into this inquiry. It suffices for present purposes to indicate what is the ultimate inquiry to be solved upon the accounting.

SHIPMAN, J. There are two motions in regard to the above-entitled cause. They were made in consequence of the opinion of the court, which recommitted the report to the master. 39 Fed. Rep. 462. One is by the plaintiff, that it may be permitted to present to the master new evidence in regard to the Johnson loom. The second is by the defendant, asking for a reargument of the question arising upon the exceptions to the master's report. So much of the defendant's motion as relates to the exception to the master's conclusion in regard to the rule for the computation of profits in case an advantage was found by the use of the patented device described in the fifth claim of the patent was heard before Judge WALLACE and myself. Judge WALLACE's opinion, in which I concur, is to the effect that the rule which the master adopted was the proper one, and consequently the exceptions which relate to that part of the report are overruled, and his conclusion that there was a failure to establish a legal basis for the computation of profits is sustained.

The question then arises as to the propriety of recommitting the report, either for the purpose of taking additional evidence in regard to the Johnson loom or for new findings of fact. The master said in his report:

"In view of the expense in time and money already consumed in this case, I deem it proper to report further respecting the factor of superiority, [of complainant's invention,] so that in case the conclusions of law may be overruled on exceptions, the necessity of sending the case back for further report may possibly be avoided."

This course was eminently proper. The accounting before him commenced in the latter part of 1882 or in 1883. The defendants' testimony in regard to the Johnson motion was taken in May, 1887, and their testimony was closed July 21, 1887. The master's draft report was dated July 27, 1888. The hearing was a long and very expensive one, the testimony is voluminous, and the questions of fact require

much study. The case will probably go to the supreme court, and, if the conclusion of law in regard to the rule for computation of profits should not be sustained, it would be very desirable to have the findings of the master and of this court upon the volume of testimony in such condition that the supreme court can also review the questions of fact, and, if practicable, bring this expensive litigation to a close. To this end it is important that the report should be recommitted for the purpose specified in my former opinion.

The next question is in regard to the admission of new testimony by the complainant in respect to the Johnson device. The defendants' testimony in regard to this loom was taken near the close of the exhaustive hearing before the master. The complainant's counsel were not at the time able to find and obtain rebutting testimony, for the reason stated in the affidavit of Mr. Stephens, and also, in my opinion, did not give to this part of the defendant's testimony the importance which it subsequently assumed. It is now able to find and to produce testimony which it deems important. While it does not bring itself, without question, within the rules which ordinarily govern the reopening of a hearing to admit newly-discovered evidence, the complainant has not yet presented that part of its case, and has not had a full opportunity to do so, and it would be, in my opinion, inequitable to say that it never shall present it. The motion of the plaintiff is granted.

The remaining question arises upon the application of the defendants for a reargument of the exceptions to the master's report, in order to show that the facts in regard to the Johnson motion, which the court desires to have found, were found by the master. After a draft report had been submitted, and exceptions thereto had been filed, which were considered and overruled, the master signed and filed the draft as his final report. He also says in his report:

"Written requests, somewhat voluminous, to find facts and conclusions upon matters not included in such report, having been presented, such requests are filed herewith, with my action indicated thereon."

The defendant filed 92 requests to find upon matters of fact, and 14 requests to find conclusions of law. To the requests upon matters of fact the master appended the words "I so find," or "I do not so find," or "Substantially correct." These findings were treated by the parties as, and I have assumed them to be, *addenda* to the master's report, but I have not attributed to the statements contained therein the same importance which unquestionably belongs to the main report. The ninth request is to find that the following number of yards of carpet were woven at defendants' mill during the years 1874 to 1881, inclusive, the average amount woven per loom per day being stated as reduced *pro rata* to the number of wires to the inch of carpet to an arithmetically equivalent number of yards of nine-wire carpet, the yards so reduced being termed "9-wire level,  *  *  *  on 54 Gilbert & Taft looms, including the Sterling loom, and three sample looms, Nos. 54, 55, and 56, with the Davis and Duckworth wire motion devices,  *  *  *  average per day 53.37 yards." The master says: "I so find." Similar

requests were made in regard to each set or class which made up the 61 infringing looms. The daily average of the 61 looms is found to be 52.90 yards. The fifty-ninth request is that—

"The Johnson loom, with the said motion, for the seven years—May 1, 1874, to April 30, 1881—wove from 1,288,623 yards to 1,842,314 yards per year of 10-wire tapestry, 216 sets of worsted ends, and averaged a daily production in gross per year of from 44.65 to 50.55 yards per loom of said carpet. A small immaterial amount in fact of shoe carpet was woven in the earlier years irregularly on a few looms. The gross daily average or loom for said seven years was 48.531 yards of 10-wire carpet, equal to 53.935 yards of 9-wire level."

The master said, "Substantially correct." In reply to subsequent requests the master found facts which, it is claimed, gave the Johnson loom additional allowances in its favor; so that if an estimate of these allowances was made it would be found that the Johnson loom, with its motion, could weave 8.16 per cent. more per day than the 61 infringing looms did, upon an average, weave. If this evidence enables the master to find, as his conclusion from it and the other testimony, that the Johnson motion was equal or superior to the motion which, for convenience sake, I call the "Webster motion," he can easily state such conclusion. He did not state it in his answers to the eighty-second and eighty-eighth requests, although he had an opportunity to do so, and the omission seemed to me of importance. The general conclusion which the defendants asked the master to find in regard to the superiority of the motions, seven of which they claimed to be free and open to the public at the date of the Webster patent, were, with the answers thereto, as follows:

"(81) Complainant has not shown any gain or profit or advantage to defendants by the use of the Davis or Duckworth motions, as compared with the use under similar circumstances of the following motions: (*a*) The Bigelow. (*b*) The Collier Bandy, (1862.) (*c*) The Collier Overhead or Upright. (*d*) The Johnson. (*e*) The Weild Trough. (*f*) The Weild Cylindrical. (*g*) The Moxon. (*h*) The Magnetic. I so find.     J. A. S.

"(82) Defendants have shown that said motions *a, b, c, d, e, f, g,* and *h* of request No. 81 are equal or superior to the Davis or Duckworth motions, and of equal or superior advantage or usefulness in carpet manufacture. I do not so find.     J. A. S."

"(87) Complainant has not shown any increase in the average amount of carpet woven per loom in the same time, due to the use of the Webster combination of the 5th claim, as compared with said wire motions *a, b, c, d, e, f, g,* and *h* of request No. 81. I so find.     J. A. S.

"(88) Defendants have shown that said motions *a, b, c, d, e, f, g,* and *h* of request No. 81, upon looms old and well known in the art prior to the date of the Webster patent, and of the period of infringement herein, are capable of running at as great and greater loom speed than the Davis or Duckworth motions were run at, and of weaving more carpet per day per loom. I do not so find.     J. A. S."

The answers throw no light upon the subject to which the questions relate. Requests 82 and 88 were probably construed by the master to call for a finding of the inferiority of the Davis or Duckworth motions to each one of the specified motions, and his negative answer is there-

fore consistent with a belief that the Davis or Duckworth motions had been proved to be inferior to one or more of the specified motions. It is nevertheless true that the master could, if he had chosen, have made a specific finding under question 82 in regard to the Johnson or any other motion. In response to the plaintiff's requests, he had already indicated his opinion in regard to the state of the evidence upon the productive capacity of the Moxon and Magnetic looms. I think that he did not intend to state his conclusions in regard to the Johnson motion, although he may think that its superiority is proved, and therefore I prefer that he should state his own conclusions from his patient study and accurate knowledge of the evidence, rather than that they should be spelled out from the answers to the defendants' requests.